IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| IN RE: COMCAST CORPORATION PEER-<br>TO-PEER (P2P) TRANSMISSION<br>CONTRACT LITIGATION | MDL No. 1992 |
|---|---|
| This Document Relates To: | Civil Action No. 2:08-MD-1992-LDD |
| All Actions | |

## ORDER

AND NOW, this 29th day of June 2010, upon consideration of Plaintiff Jon Hart's

Motion for Final Approval of Class Action Settlement (Doc. Nos. 69-73), the Objections of

Michael Arana, Jordan Leigh, Daniel Libonati and Roger Lis (Doc. No. 66), the Objections of

Russ Smith (Doc. Nos. 67 & 82), the Objections of William Kristy (Doc. No. 80, Ex. 1), the

Objections of Joan Adams (Doc. No. 68), the Unopposed Motion of Joan Adams to Withdraw

Objections (Doc. No. 81), Defendants' Omnibus Response (Doc. No. 79), Plaintiff Hart's

Response (Doc. No. 80), and following the public hearing held on June 15, 2010, it is hereby

ORDERED as follows:

1. Plaintiff Hart's Motion for Final Approval of Class Action Settlement (Doc. Nos. 69-73) is GRANTED.

2. Joan Adams's Unopposed Motion to Withdraw Objections (Doc. No. 81) is GRANTED.

3. All other Objections (Doc. Nos. 66, 67, 82, & 80, Ex. 1) are OVERRULED.

1

I.     FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.     BACKGROUND

1.     When Plaintiff Jon Hart submitted the proposed settlement for preliminary approval in this coordinated Multidistrict litigation proceeding, the Court received and reviewed detailed briefing in connection with preliminary approval and has already had occasion to discuss the proceeding's background at considerable length. The Court therefore incorporates its preliminary approval order herein by reference. *See* Order of December 14, 2009 (Doc. No. 61). Following preliminary approval, Plaintiff Hart and Defendant engaged in a robust notice program, detailed herein. On June 15, 2010, this Court held a public hearing to determine whether final approval of the class settlement is appropriate. For the reasons set forth below, we certify the Settlement Class, overrule the objections, and grant final approval to the Settlement.

B.     STANDARD OF REVIEW

2.     Under Federal Rule 23(e), "a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e).

3.     Approval is appropriate if the proposed settlement is "fair, reasonable and adequate." *See, e.g., In re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3d Cir. 2001).

4.     Whether a settlement is fair, reasonable and adequate is committed to the sound discretion of the court, and is presumed if the settlement is the result of arms' length negotiations between capable counsel. *See, e.g., In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 796, 805 (3d Cir. 1995); *see also id.* at 784 ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class

2

action litigation, and it should therefore be encouraged.").

5.      The presumption of fairness cannot be overcome by mere speculation or supposition. *See, e.g., In re Cendant Corp.*, 264 F.3d at 235 (rejecting objection as "purely speculative").

C.      FAIRNESS OF THE SETTLEMENT

6.      The Third Circuit has adopted a nine-factor test to help district courts make their final decisions as to whether to approve settlements as fair, reasonable, and adequate. *See Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975).

7.      The *Girsh* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness of the settlement in light of the risks of litigation. *Id.* at 157; *see also In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 323 (3d Cir. 1998) (listing additional considerations).

8.      Here, it is clear that most of the *Girsh* factors weigh in favor of approval, and to the extent that any factor weighs against approval, namely that Defendant could withstand a greater judgment, such factors do not carry much weight.

9.      The first *Girsh* factor accounts for the "costs, in both time and money, of continued litigation." *In re Gen. Motors*, 55 F.3d at 812 (internal citation omitted); *In re Warfarin*, 391 F.3d at 535-36.

10.     In the absence of this settlement, significant time and money would be spent.

3

Continued litigation would require several threshold dispositive motions; certification and merits discovery; the retention of experts and submission of expert reports; at least one jury trial, and quite possibly several jury trials.

11.    Whatever the outcome after trial, litigation likely would continue for months if not years through post-trial motions and appeal. *See, e.g., In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 179 (E.D. Pa. 2000) ("[T]he extremely large sums of money at issue almost guarantee that any outcome, whether by summary judgment or trial, would be appealed.").

12.    The time and resources saved by avoiding these costs benefit all of the parties. *See, e.g., In re Warfarin*, 391 F.3d at 536 ("[I]t was inevitable that post-trial motions and appeals would not only further prolong the litigation but also reduce the value of any recovery to the class.").

13.    The proceeding's complexity is compounded by its novelty; the *Hart* action was by all accounts the first class action concerning an Internet Service Provider's network congestion management practices, and other subsequent actions against other defendants have not proceeded beyond the pleadings.

14.    The first *Girsh* factor therefore weighs in favor of approval of the settlement. *See In re Prudential*, 148 F.3d at 318 ("[T]he trial of this class action would be a long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court. The prospect of such a massive undertaking clearly counsels in favor of settlement.").

15.    The second *Girsh* factor "attempts to gauge whether members of the class support the settlement." *Id.*

16.    Here, notice was provided to the class with the monthly billings statements of

4

every current Comcast customers; in published notices in print media (*People* and *Maxim* magazines) and online media (as banner advertisements on websites run by Yahoo, 24/7 Real Media and Microsoft Media Networks); in an interactive, informational settlement website (www.p2pcongestionsettlement.com) supported by Internet search engines; and in notices to appropriate state and federal officials.

17.     Despite that robust notice program, and a vigorous opt out campaign by Robert Topolski, the named plaintiff in one of the coordinated actions, only 6 individuals filed objections to the settlement (one of which was later withdrawn), only 143 individuals submitted timely requests for exclusion (some of which actually indicated an absence of individual claims to pursue), and no state or federal officials intervened.

18.     In light of the estimated size of the class (1,000,000 individuals), the percentage of objections (.0006%) and opt outs (.0143%) is exceedingly low.

19.     The second *Girsh* factor therefore weighs in favor of approval of the settlement. *See, e.g., Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (finding that the "response of the class members, both in numbers and in rationale, strongly favors settlement").

20.     The third *Girsh* factor ensures that the parties had adequate information to permit an informed, competent evaluation of the legal and factual issues involved in the case. *In re Prudential*, 148 F.3d at 319.

21.     Here, counsel for Mr. Hart engaged experts to review Comcast's practices; reviewed informal discovery provided during the course of the parties' mediation; and analyzed the voluminous administrative record of the FCC proceeding that was ongoing at the time.

22.     Thus, counsel for Mr. Hart adequately appreciated the merits of his claims and

5

Comcast's defenses and could negotiate in an informed manner.

23.     The Objectors insistence that extensive merits discovery be conducted before settlement ignores not only a primary motivation of all settlements – the avoidance of discovery costs – but the many decisions approving settlements where there has been little to no formal discovery. *See, e.g., Krangel v. Golden Rule Res., Ltd.*, 194 F.R.D. 501, 507 (E.D. Pa. 2000); *Freeman v. City of Phila.*, 751 F. Supp. 509, 517 (E.D. Pa. 1990); *Galloway v. Southwark Plaza Ltd. P'ship*, No. 01-0835, 2003 WL 22657200, at *6 (E.D. Pa. Oct. 27, 2003); *see also In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981); *Schwartz v. Novo Industri A/S*, 119 F.R.D. 359, 362 (S.D.N.Y. 1988).

24.     The third *Girsh* factor therefore weighs in favor of approval of the settlement.

25.     The fourth *Girsh* factor accounts for "what the potential rewards (or downside) of litigation might have been had class counsel decided to litigate the claims rather than settle them." *In re Cendant*, 264 F.3d at 237 (internal citation omitted).

26.     In considering the fourth *Girsh* factor, courts should not conduct a mini-trial on the merits of the claims and defenses asserted. Rather, courts must, "to a certain extent, give credence to the estimation of the probability of success proffered by class counsel, who are experienced with the underlying case, and the possible defenses which may be raised to their causes of action." *In re Ikon*, 194 F.R.D. at 181 (internal citation omitted).

27.     Here, Defendants would have vigorously defended this case by moving to compel arbitration, which was compelled in the related *Sidner v. Comcast* action; by moving to dismiss due to several threshold defenses, which have caused courts to dismiss similar claims in the *Lyons v. Cox* and *Fink v. Time Warner* proceedings; and by invoking the disclosures in its Acceptable Use Policy and the terms and conditions of its Agreement for Residential Services,

6

which disclosed that it managed congestive conditions on its network.

28.     It is not necessary for the Court to rule on these defenses now. For present purposes it is sufficient to state that they are colorable and would have presented significant hurdles to establishing liability absent this settlement.

29.     These hurdles could not be side stepped simply by invoking the FCC Order the objectors had hoped to rely on, as the United States Court of Appeals for the District of Columbia Circuit recently vacated that Order.[1] *See Comcast Corp. v. FCC,* 600 F.3d 642, 661 (D.C. Cir. 2010); *see also Block v. U.S. Int'l Trade Comm'n,* 777 F.2d 1568, 1571 (Fed. Cir. 1985) (finding that vacated administrative law judge's decision had no preclusive effect).

30.     The fourth *Girsh* factor therefore weighs in favor of approval of the settlement. *See In re Prudential,* 148 F.3d at 319-20.

31.     The fifth *Girsh* factor "attempts to measure the expected value of litigating the action rather than settling it at the current time." *In re Gen. Motors,* 55 F.3d at 816.

32.     In making this inquiry, courts consider the "potential damage award if the case were taken to trial against the benefits of an immediate settlement." *In re Prudential,* 148 F.3d at 319.

33.     Here, proving damages on a classwide basis would require proof of each Class Members' alleged lost use of the Comcast service. That would be complicated because P2P use is only one of numerous uses for the service; because Comcast only managed certain P2P uploads and did not manage any P2P downloads; because Comcast only managed a subset (an

---

[1]     This Court notes that the Court of Appeals found that the FCC lacked jurisdiction; it did not comment upon the FCC's rulings on the merits. *See Comcast Corp. v. FCC,* 600 F.3d 642, 645 (D.C. Cir. 2010).

estimated 10%) of P2P uploads; because when triggered those practices generally stopped in less than one minute; and because only a subset (an estimated 10%) of file-sharing is even legal. *See* Declaration of Mitch Bowling, FCC Docket No. 07-52, ¶ 25 (July 21, 2008) (attesting to percentage of uploads managed and duration of management); *MGM Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 923 (2005) (citing studies quantifying illegal file sharing); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001) (same).

34.     Proving damages individually, let alone collectively, would be difficult and would likely require expert testimony. Thus, even if the plaintiffs could establish liability, there is a real risk they could not establish any damages. *See In re Cendant*, 264 F.3d at 239 (explaining that "establishing damages at trial would lead to a 'battle of experts,' with each side presenting its figures to the jury and with no guarantee whom the jury would believe").

35.     The fifth *Girsh* factor therefore weighs in favor of approval of the settlement. *See id.*

36.     The sixth *Girsh* factor accounts for the risk that a class may not be certified absent the settlement as well as the risk that a class may be decertified. *See id.*; *In re Prudential*, 148 F.3d at 321.

37.     Here, no class was certified before settlement and every indication is that absent a settlement Defendants would resist certification by arguing, among other things, that these claims sound in fraud and thus are ill-suited to class treatment; that class members would be difficult to ascertain by reference to objective criteria; that many of their customers agreed to resolve disputes in arbitration and thus agreed not to participate in a class action; and that differences in state substantive law would present serious manageability problems. *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305 (2009) (standards for certification).

8

38.     As with the defenses to the plaintiffs' claims, the Court need not resolve these defenses to certification now. It is enough to say that they are colorable.

39.     The sixth *Girsh* factor therefore weighs in favor of approval of the settlement.

40.     The seventh *Girsh* factor is "concerned with whether the defendants could withstand a judgment for an amount significantly greater than the Settlement." *In re Cendant*, 264 F.3d at 240. However, a determination that a defendant could withstand a greater judgment "does not carry much weight in evaluating the fairness of the Settlement." *Meijer, Inc. v. 3M*, No. 04-5871, 2006 WL 2382718, at *16 (E.D. Pa. Aug. 14, 2006) (citing *Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 116 (E.D. Pa. 2005)).

41.     Here, although Comcast can satisfy its obligations under the settlement, and could withstand a greater judgment, this factor carries little weight and is thus of minor consequence in this case. *See, e.g., In re Warfarin*, 391 F.3d at 538 ("[T]he District Court concluded that DuPont's ability to pay a higher amount was irrelevant to determining the fairness of the settlement. We see no error here."); *see also Parks v. Portnoff Law Assocs.*, 243 F. Supp. 2d 244, 252 (E.D. Pa. 2003) ("[A]t the hearing the net worth was not established. On the record before the court, this *Girsh* factor weighs neither in favor nor against settlement.").

42.     The seventh *Girsh* factor therefore only slightly disfavors approval of the settlement, and, in the context of all of the factors, does not counsel against approval. *See Meijer*, 2006 WL 2382718, at *16.

43.     The eight and ninth *Girsh* factors assess "whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial." *In re Prudential*, 148 F.3d at 322.

44.     They test two sides of the same coin: (1) the best possible recovery; and (2) the

9

likelihood of recovering less, or nothing, in the absence of a settlement. *In re Warfarin*, 391 F.3d at 538.

45.     In making this assessment, courts must consider that "settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution" and "guard against demanding too large a settlement based on [the court's own] view of the merits of the litigation." *In re Gen. Motors*, 55 F.3d at 806.

46.     Here, the objectors have not reasonably quantified the best possible recovery. Instead, they simply assume that all of Comcast's high speed Internet subscribers are entitled to make a claim, and indeed that all such subscribers received no benefit whatsoever from the services provided and are therefore entitled to a full refund.

47.     But the objectors articulate no reason why the 93-94% of customers who did not use P2P protocols would be entitled to make a claim at all. *See* Bowling Decl. ¶ 15.

48.     Nor do the objectors articulate why the 6-7% of customers who used P2P protocols would be entitled to a full refund given that Comcast managed no downloads, *id.* at ¶ 24, managed approximately 10% of uploads, *id.* at ¶ 25, and managed those 10% of uploads for a short amount of time, usually less than one minute, *id.*

49.     Nor do the objectors articulate why they should be compensated for any alleged interference with illegal "sharing" of copyrighted content, which accounts for approximately 90% of file sharing traffic. *See, e.g., Grokster*, 545 U.S. at 923; *Napster*, 239 F.3d at 1013.

50.     On the other hand, the objectors' own pleadings affirmatively allege that any damages they may have suffered are in fact "very small." Lis Compl. ¶ 48; Libonati Compl. ¶ 45; Topolski Compl. ¶ 46.

51.     The results of the other actions against other Internet service providers

10

demonstrate that the recovery of damages in this case would be challenging. *See Chin v. RCN*, No. 08-7349 (S.D.N.Y.) (settled for six month injunction of discontinued practices and no compensation); *Lyons v. Coxcom, Inc.*, No. 08-2047 (S.D. Cal.) (settled for two year injunction of discontinued practices and no compensation); *Fink v. Time Warner*, No. 08-9628 (S.D.N.Y.) (dispositive motions pending). Indeed, this settlement would make the *Hart* action the first – and to date the only – P2P action to recover so much as a penny from anyone for anyone.

52.     The objectors argue that the relief provided by this settlement is inadequate absent an injunction of Comcast's former practices, which were discontinued eighteen months ago. The Court disagrees for the reasons set forth in its preliminary approval order and at the June 15, 2010 hearing. *See* Order of December 14, 2009.

53.     The objectors suggest that the decision issued in *Comcast Corporation v. FCC*, 600 F.3d 642 (D.C. Cir. 2010), warrants reconsideration of the preliminary approval order.

54.     However, the absence of the FCC Order does not change the *status quo* with respect to any injunctive relief, as that Order did not enjoin anything to begin with.

55.     In any event, on these facts, where the challenged conduct was voluntarily abandoned long ago and there has been no showing that it is likely to recur, any injunction would be unwarranted. *See, e.g., FTC v. Evans Prods. Co.*, 775 F.2d 1084, 1087-88 (9th Cir. 1985).

56.     In summary, of the nine *Girsh* factors, only one (the ability to withstand greater judgment) does not favor approval, and that factor carries little weight.

57.     The proposed settlement is fair, reasonable and adequate, is in the best interests of the settlement class, and will therefore be approved.

### D.     CERTIFICATION OF THE SETTLEMENT CLASS

58.     In evaluating class action settlements, "a district court must first find a class

11

satisfies the requirements of Rule 23, regardless whether it certifies the class for trial or for settlement." *In re Prudential*, 148 F.3d at 308; *In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.*, 418 F.3d 277, 300 (3d Cir. 2005).

59.     Federal Rule of Civil Procedure 23(a) requires that the four following factors be satisfied by any proposed class: "One or more members of a class may sue or be sued as representative parties on behalf of all members only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

60.     Federal Rule of Civil Procedure 23(b)(3) provides that certification is proper if "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

61.     With regard to numerosity, "[n]o minimum number of plaintiffs is required . . . ." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). Generally, however, "if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Id.*

62.     Here, the parties estimate and no one disputes that there are approximately one million class members.

63.     The numerosity requirement is therefore satisfied here.

64.     The Court notes that the objectors continue to attack the scope of the class, arguing that the class should include all of Comcast's high speed Internet customers.

12

65.     The Court finds that the proposed class, which is carefully drawn to include only those who used or intended to use the managed protocols, comports with the Supreme Court's direction that absent class members should be protected by "blocking unwarranted or overbroad class definitions . . . ." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

66.     Moreover, the Court is at a loss to decipher what claims Comcast customers who neither used nor intended to use a managed P2P protocol would have, especially when the challenged conduct appears to have been designed to protect and improve their service.

67.     "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183 (3d Cir. 2001) (quoting *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994)). "Because the requirement may be satisfied by a single common issue, it is easily met . . . ." *Baby Neal*, 43 F.3d at 56.

68.     Here, Plaintiff Hart alleges that there are six common questions of law or fact: (1) whether Comcast violated the consumer protection, advertising, and contract laws alleged in the Complaint; (2) whether Comcast's alleged interference with P2P use breached its subscriber agreements; (3) whether Comcast's statements to the public misrepresented its services; (4) whether Comcast knew or recklessly disregarded that its statements were materially false and misleading; (5) whether Comcast adequately disclosed its network management practices; and (6) to what extent the members of the class have sustained damages and the proper measure of damages.

69.     The commonality requirement is therefore satisfied here.

70.     The typicality requirement ensures that "the incentives of the plaintiffs are aligned with those of the class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006)

13

(quoting *Baby Neal*, 43 F.3d at 55).

71.     "[T]he requirement 'does not mandate that all putative class members share identical claims' because 'even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories' or where the claim arises from the same practice or course of conduct." *Newton*, 259 F.3d at 184 (citations omitted).

72.     Here, because Plaintiff Hart's claims and the claims of the class arise out of the same conduct by Comcast, and the proof that Plaintiff Hart would be required to present to establish his claims would also prove the claims of the rest of the class, the typicality requirement is satisfied here.

73.     The adequacy requirement "assure[s] that the absentees' interests are fully pursued: it considers whether the named plaintiffs' interests are sufficiently aligned with the absentees', and it tests the qualifications of the counsel to represent the class." *In re Gen. Motors*, 55 F.3d at 800 (citing *Weiss v. York Hosp.*, 745 F.2d 786, 811 (3d Cir. 1984)).

74.     Here, the Court finds that Hart's claims are typical of the class and further finds that Hart has retained qualified, competent, experienced counsel to represent him and the absent members of the class.

75.     The adequacy requirement is therefore satisfied here.

76.     The predominance requirement tests whether the class "is sufficiently cohesive to warrant adjudication by representation." *In re Cmty. Bank of N. Va.*, 418 F.3d at 309 (citing *Amchem Prods.*, 521 U.S. at 623-24). It is "readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem Prods.*, 521 U.S. at 625.

77.     Here, questions regarding Comcast's congestion management practices and any

14

possible liability arising from those practices are common for all of the class members, and predominate over any individual claims that may arise.

78.     The predominance requirement is therefore satisfied here.

79.     The superiority requirement "asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of 'alternative available methods' of adjudication." *In re Prudential*, 148 F.3d at 316 (internal citations omitted).  Rule 23(b)(3) identifies four pertinent considerations:  "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3).

80.     Here, there are potentially one million individuals affected by Comcast's alleged actions and their individual damages are very small.  Those individuals are located across the country and there is no suggestion that they are disproportionately located in any other forum or region.

81.     The superiority requirement is therefore satisfied here.

82.     Accordingly, the requirements of Rule 23(a) and (b) are satisfied, and the Court will certify the class for the purpose of settlement only.

E.     ADEQUACY OF THE NOTICE

83.     "For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

84.     This "best notice" must inform the proposed class members of the nature and

15

terms of the action, their right to appear through counsel, their right to opt-out, and the method for and effects of opting-out. *Id.*

85.     Here, the class notices provided detailed information about the case, eligibility requirements, settlement terms, relevant legal rights, how to opt-out of or object to the settlement, and how to contact class counsel or the claims administrator. Further, the notice plan provided five methods of notifying class members: (1) publication of notice on a settlement website maintained by the claims administrator and supported by search engines; (2) publication of notice in *People* magazine and *Maxim* magazine; (3) publication of banner advertisements (not "pop-up" advertisements as speculated in the Objections of Joan Adams) run on third-party websites run by Yahoo, 24/7 Real Media, and Microsoft Media Networks; (4) providing notice to appropriate federal and state officials pursuant to 28 U.S.C. § 1715; and (5) providing notice with the monthly billing statement of each current Comcast high-speed Internet customer.

86.     Objecting Plaintiffs object to the notice program because notice was sent to customers with their billing statements rather than by email to their Comcast-provided email addresses, the concern being that direct mail is more expensive than email.

87.     Objecting Plaintiffs do not, however, provide support for their position in favor of email notice only.

88.     On the contrary, "[i]t is well settled that in the usual situation first-class mail and publication in the press fully satisfy the notice requirements of both Fed. R. Civ. P. 23 and the due process clause." *Zimmer Paper Prods., Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 90 (3d Cir. 1985).

89.     Moreover, providing notice exclusively to the Comcast-provided email addresses of current customers would not reach former customers, would not reach current customers who

16

do not use their Comcast email addresses, and would not reach current customers who may have set their email filter settings to block out emails like the Objecting Plaintiff's proposed notice email.

90. By contrast, the notice program here reached both current customers and former customers via publication in magazines and websites.

91. Indeed, the notice program here was extensive and wide reaching.

92. Direct notice is only required if a class member can be identified with reasonable effort. *See* Fed. R. Civ. P. 23(c)(2)(B).

93. Here, there is no way to identify Comcast customers who are P2P users, and thus direct notice to the class was not required.

94. The settlement provided direct notice to current customers anyway, making it compliant not only with due process, but best practices.

95. In sum, the form, substance, manner and timing of the notice constituted the best notice practicable under the circumstances and satisfied the requirements of due process and Rule 23. Moreover, it was not unduly expensive.

[Remainder of the page intentionally left blank.]

17

II.   FINAL APPROVAL ORDER

For the reasons set forth above, it is hereby ORDERED as follows:

1.   Plaintiff Hart's Motion for Final Approval of Class Action Settlement (Doc. Nos. 69-73) is GRANTED.

2.   Joan Adams's Unopposed Motion to Withdraw Objections (Doc. No. 81) is GRANTED. The Court finds that Adams filed her objections without the benefit of Plaintiff's Motion for Final Approval (Doc. Nos. 69-73) or Defendants' Omnibus Response to Objections (Doc. No. 79), and therefore grants Adams leave to withdraw her objections pursuant to Federal Rule of Civil Procedure 23(e)(5).

3.   The Objections of Russ Smith (Doc. Nos. 67 & 82) are OVERRULED. His objections appear to relate not to this proceeding (which concerns P2P management), but to his claims against Comcast and others in *Smith v. TRUSTe, et al.*, No. 09-04567 (D.N.J.) (Kugler, J.) (which concerns spam management).

4.   The Objections of William Kristy (Doc. No. 80, Ex. 1) are OVERRULED. These objections concern only the sufficiency of the $16.00 maximum individual claim amount, which the Court finds is fair, reasonable and adequate and in the best interest of the class.

5.   The Objections of Michael Arana, Jordan Leigh, Daniel Libonati and Roger Lis (Doc. No. 66) are OVERRULED. Those objections are the functional equivalent of a motion for reconsideration, and as such are untimely pursuant to Local Rule of Civil Procedure 7.1 and improper because they assert no legitimate grounds for reconsideration of the Court's preliminary approval order of December 14, 2009 (Doc. No. 61). The Court has nevertheless considered all of their objections, and counsel's argument at the final approval hearing, and finds that none of their objections warrants denial of final approval of the settlement. In addition, the Court incorporates its preliminary approval order herein by reference. *See* Order of December 14, 2009 (Doc. No. 61).

6.   The capitalized terms used in this Order shall have the same meaning as in the Settlement Agreement except as may otherwise be ordered.

7.   The Court has jurisdiction over the subject matter of the Action, the parties and all members of the Settlement Class.

8.   The Court finds, solely for purposes of considering this Settlement, that the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3) are satisfied because: (a) the members of the Settlement Class are so numerous that joinder of all members of the class is impracticable; (b) there are questions of law or fact

common to the members of the Settlement Class; (c) those common questions predominate over individual questions; (d) Plaintiff's claims are typical of the claims of the Settlement Class; (e) Plaintiff and Class Counsel fairly and adequately represented and protected the interests of the members of the Settlement Class; and (f) the Settlement is superior to other available methods for an efficient adjudication of this controversy.

9.  The Court finds that the Settlement Agreement was negotiated in good faith and at arms' length over the course of many months; that there was sufficient time and information for purposes of negotiating in an informed manner; that the negotiations were overseen by an experienced and impartial mediator; and that the substantive terms of the Settlement were negotiated before the attorneys' fees award was negotiated.

10. The Court finds that the Settlement is in all respects fair, reasonable and adequate and in the best interests of the Settlement Class.

11. The Court finds that the form, substance, manner and timing of the notice to the Settlement Class of the pendency of the action as a class action and of the terms and conditions of the proposed Settlement constituted the best notice practicable under the circumstances and satisfied the requirements of due process, Federal Rule of Civil Procedure 23, and any other applicable law or requirements.

12. The Court finds that the parties satisfied the notice and other requirements of the Class Action Fairness Act of 2005 (CAFA), codified at 28 U.S.C. § 1715, by causing appropriate notice to be provided to the appropriate federal and state officials on April 24, 2009, which was:  (1) no more than ten (10) days after moving for preliminary approval; and (2) more than ninety (90) days before final approval.

13. The Settlement is therefore APPROVED and the parties shall therefore effectuate the Settlement Agreement, including but not limited to paying all timely and valid claims made, paying all costs of claims administration and notice, and reverting any remaining funds to the Defendants, in the manner and according to the schedule set forth in the Settlement Agreement.

14. The Court therefore certifies the following class for settlement purposes only: "All current and former Account Holders who either:  (1) used or attempted to use the Comcast service in order to use the Ares, BitTorrent, eDonkey, FastTrack or Gnutella P2P protocols at any time from April 1, 2006 to December 31, 2008; or (2) used or attempted to use the Comcast service in order to use Lotus Notes to send emails at any time from March 26, 2007 to October 3, 2007." Excluded from the Settlement Class are: Comcast; any parent, affiliate, subsidiary, predecessor, successor, assign or related entity of Comcast; any officer, director, agent, servant, or employee of Comcast; any officer, director, agent, servant, or

employee of any parent, affiliate, subsidiary, predecessor, successor, assign or related entity of Comcast; any judge presiding over any of the actions that together comprise the Action or Related Actions; and any immediate family member of any such person(s). Also excluded from the Settlement Class are the persons and/or entities who timely requested exclusion from the Settlement Class.

15.     Members of the Settlement Class shall be bound by this Order and all other determinations and judgments in this Action.

16.     Members of the Settlement Class and the successors and assigns of any of them, fully, finally and forever release, relinquish, and discharge, and are hereby permanently barred and enjoined from instituting, commencing or prosecuting, either directly or in any other capacity, any claim, liability, right, demand, suit, matter, obligation, damage, loss or cost, action or cause of action, of every kind and description that the Releasing Party had or has, including assigned claims, whether known or unknown, asserted or unasserted, latent or patent, that is, has been, could reasonably have been or in the future might reasonably be asserted by the Releasing Party either in the Action or in the Related Actions or in any action or proceeding in this Court or any other court or forum, regardless of legal theory, and regardless of the type or amount of relief or damages claimed, against any of the Released Parties arising out of or relating to Comcast's management of P2P or Lotus Notes on its network prior to the Effective Date, Comcast's disclosures related to those practices prior to the Effective Date, or Comcast's advertisements or representations concerning the nature, existence or non-existence of any limitations or restrictions on the use or speed of the Comcast service or the ability or inability to access or make use of the Internet prior to the Effective Date, including but not limited to all claims that were brought or could have been brought in the Action or the Related Actions. Without limiting the generality of the foregoing, Released Claims shall include, with regard to the foregoing subject matter: (1) any class, group, collective or individual claim for any breach or violation of any federal or state statute, case law, common law or other law; (2) any claim for breach of any duty imposed by law, by contract or otherwise; and (3) any claim for damages, injunctive relief, declaratory relief, class damages or relief, penalties, punitive damages, exemplary damages, restitution, rescission or any claim for damages based upon any multiplication or enhancement of compensatory damages arising out of or relating to the above.

17.     Any individuals who submitted a timely and valid Request for Exclusion may individually assert any Released Claim that any Releasing Parties asserted against any of the Released Parties.

18.     Neither the Preliminary Order and Memorandum, this Order and Final Judgment and Memorandum, the Settlement Agreement, nor any of its terms and provisions, nor any of the negotiations or proceedings connected with it, nor any of the documents or statements referred to therein shall be:

(a) offered or received against the Defendants as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by any of the Defendants with respect to the truth of any fact alleged in the Actions or Related Actions, the validity of any claim that has been or could have been asserted in the Action, the Related Actions or in any litigation, the ability or appropriateness of maintaining or pursuing a class action in the Action, the Related Actions or in any litigation, or the ability or the deficiency of any defense that has been or could have been asserted in the Action, the Related Actions, or in any litigation, or of any liability, negligence, fault, or wrongdoing of the Defendants;

(b) offered or received against the Defendants as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by any Defendant;

(c) offered or received against the Defendants as evidence of a presumption, concession or admission with respect to any liability, negligence, fault or wrongdoing, or in any way referred to for any other reason as against any of the Defendants, in any other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Settlement Agreement, however, Defendants may refer to the Settlement Agreement to effectuate the liability protection granted them thereunder;

(d) construed against the Defendants as an admission or concession that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial; or

(e) construed as or received in evidence as an admission, concession or presumption against Hart or any of the Settlement Class Members that any of their claims are without merit, or that any defenses asserted by the Defendants have any merit, or that damages recoverable under the Complaint would not have exceeded the Settlement.

19. The Court retains exclusive jurisdiction over the parties and the Settlement Class Members for all matters relating to the Action and the Related Actions, including enforcement and administration of the Settlement Agreement and any releases or injunctions issued in connection therewith, and any other matters related or ancillary to the foregoing.

20. The following civil actions are hereby DISMISSED WITH PREJUDICE and without costs, except as provided herein:
    (a)    Hart v. Comcast of Alameda, Inc., No. 07-6350 (N.D. Cal.);
    (b)    Lis v. Comcast of Chicago Corp., No. 08-3984 (N.D. Ill.);
    (c)    Libonati v. Comcast Cablevision of Jersey City, No. 08-3518 (D.N.J.);
    (d)    Leigh v. Comcast of California II, Inc., No. 08-4601 (C.D. Cal.); and
    (e)    Aliano v. Comcast of Chicago, Inc., et al., No. 08-5320 (N.D. Ill.).

21.     All discovery, proceedings and case management deadlines in Tan v. Comcast
        Corp., No. 08-2735 (E.D. Pa.) and Topolski v. Comcast Corp. et al., No. 08-852
        (D. Or.) shall remain temporarily STAYED pursuant to Paragraph 17 of the
        Court's Order of December 14, 2009 (Doc. No. 61).

22.     The Court will schedule a status conference concerning further proceedings in
        Tan v. Comcast Corp., No. 08-2735 (E.D. Pa.) and Topolski v. Comcast Corp. et
        al., No. 08-852 (D. Or.), if any, in due course.

BY THE COURT:

Legrome D. Davis, J.

22